

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 5, 1957

Honorable William S. Fly, Chairman   Opinion No. WW-41
Finance Committee
Senate                               Re:   Conformity of Senate Bill
Austin, Texas                              61 to the requirements of
                                           Section 51-b of Article III
                                           of the Texas Constitution
                                           and to §§1351-55, Title 42,
Dear Senator Fly:                          U.S.C.A.

        You have requested an opinion of this office on the following
questions.

        1.   Does Senate Bill 61, as introduced at the
current legislative session, comply with the provisions
of Section 51-b of Article III of the Texas Constitution?

        2.   Does Senate Bill 61 comply with the require-
ments of Sections 1351-55 of Title 42 of the United
States Code Annotated?

        3.   If Senate Bill 61 does not comply with the
requirements of 42 U.S.C.A. §§1351-55, can compliance
be obtained consistently with the provisions of Section
51-b of Article III of the Texas Constitution?

        Section 51-b of Article III, H.J.R. 30, Acts 54th Leg., R.S.,
1955, p. 1824, was adopted at the general election in 1956 and is set
out in full in the footnote below.[1]  Speaking generally, this Section

---

[1]           "The Legislature shall have the power to provide
by general laws, under such limitations and restrictions
as may be deemed by the Legislature expedient, for
assistance to needy individuals, who are citizens of the
United States, who shall have passed their eighteenth
(18th) birthday but have not passed their sixty-fifty (65th)
birthday, who are totally and permanently disabled by reason
of a mental or physical handicap or a combination of physical
and mental handicaps and not feasible for vocational rehabili-
tation, and who are residents of the State of Texas, who have
resided in this State for at least one (1) year continuously im-
mediately preceding the application and who have resided in
the State for at least an additional five (5) years during the
nine (9) years immediately preceding the application for
assistance; and providing further that no individual shall
                                          (Cont'l next page)

authorizes the Legislature to enact laws providing for assistance to needy individuals who are totally and permanently disabled and to accept financial aid from the Federal Government under the Social Security Act. Senate Bill 61 is obviously designed to put into effect the necessary enabling legislation authorized by Section 51-b.

We have concluded that the bill in most of its parts complies with the requirements of Section 51-b and that those portions of the bill which do not comply can be changed so as to effect a compliance with both Section 51-b and with Sections 1351-55, Title 42, U.S.C.A. We will take up the questions of compliance presented by various parts of the bill seriatim in the order of their importance.

The most serious question raised by your request is whether Subsection 4 of Section 16-B of the bill is within the residence limitations imposed by Section 51-b of the Constitution. Subsection 4 sets out the residence qualifications requisite to coming within the provisions of the Act and reads as follows:

"Who has resided in the State of Texas for
five (5) years or more within the last nine (9) years
preceding the date of his application for assistance
and has resided in the State of Texas continuously
for one (1) year immediately preceding the application; . . ."

The residence requirements of the constitutional provision limit authorized assistance to needy individuals "who have resided

1 Cont'd

permanently and totally disabled during any period when he is receiving old age assistance, aid to the needy blind, or aid to dependent children, nor while he is residing permanently in any completely State supported institution; and provided further that not more than Twenty Dollars ($20) a month out of State funds may be paid to any individual recipient; and provided further that the amount paid out of State funds to any individual may never exceed the amount paid to that individual out of Federal funds; and provided further that the amount paid out of State funds for assistance payments shall not exceed One Million, Five Hundred Thousand Dollars ($1,500,000) per year.

"The Legislature shall have the authority to accept from the Government of the United States such financial aid for individuals who are permanently and totally disabled as that Government may offer not inconsistent with the restrictions herein provided."

in this State for at least one (1) year continuously immediately preceding the application and who have resided in this State for at least an additional five (5) years during the nine (9) years immediately preceding the application for assistance; . . ."

Section 1352(b) (1), 42 U.S.C.A., prohibits the use of federal funds if the State residence requirements exclude "any resident of the State who has resided therein five years during the nine years immediately preceding the application for aid to the permanently and totally disabled and has resided therein continuously for one year immediately preceding the application."

If Section 51-b requires a total residence period of six years rather than five years during the nine years immediately preceding application for assistance, the total residence requirement contained in the bill as presently drawn is unconstitutional; and the Legislature lacks the power to enact a law which would enable the State of Texas to comply with the provisions of the federal act.

The word "additional" makes the constitutional provision ambiguous. Both the requirement for continuous residence and the requirement for total residence are measured from the date of application for assistance and thus necessarily overlap. The Constitution places a residential requirement of the year immediately preceding the application plus an additional five years during the nine-year period immediately preceding the application. If the applicant cannot count the first year of the nine-year period, he is then limited to compiling his five-year total from a period of eight years, and the Constitution expressly allows him to accumulate the five years during the nine-year period.

Although the total residence requirement need not be continuous, continuity is not prohibited. If for five years immediately preceding application the applicant has continuously resided in Texas, obviously the applicant has met the requirement for continuous residence for one year immediately preceding the application. The people of Texas in adopting this amendment unquestionably intended that the requirement of total residence be met within a nine-year period immediately preceding application for assistance. Yet if the two residence requirements are treated as cumulative of each other, the five-year total requirement must be met within an eight rather than a nine-year period, as expressly permitted by the Constitution. The constitutional provision is undoubtedly ambiguous.

It is evident that the two residence requirements which must be met before aid can be granted are entirely different. First, there is the requirement pertaining to continuous residence and second, the additional requirement pertaining to total residence. It is obviously desirable to have a requirement of a stated period of continuous residence within the State before an individual may be

granted aid from State funds. It is also desirable to have an additional requirement of a stated period of total residence within the State before such aid can be granted and at the same time reasonable that such period of total residence need not be continuous. It is not logical to make these two requirements cumulative of each other. Each is based on entirely different considerations. The motivating factors which lead to a choice of a requisite period of continuous residence are different from the motivating factors determinative of a requisite period of total residence. An addition of the two periods to obtain a new total residence requirement is not logical and produces a hybrid.

The object of construing a written constitution is to give effect to the intent of the people adopting it. 1 Cooley on Constitutional Limitations (8th Ed. 1927) 124. When a difficulty really exists in ascertaining meaning of constitutional provisions, certain extrinsic aids may be resorted to. Among these, says Cooley, at pages 141-142, is "a contemplation of the object to be accomplished or the mischief designed to be remedied or guarded against by the clause in which the ambiguity is met with. When we once know the reason which alone determined the will of the lawmakers, we ought to interpret and apply the words used in a manner suitable and consonant to that reason, and as will be best calculated to effectuate the intent. ..." (Emphasis his.)

Prior to the adoption of Section 51-b, the Legislature had been authorized to enact and had enacted laws establishing Federal-State cooperative programs for three classes of persons: the needy aged, the needy blind and needy children.[2]

The original constitutional residence requirements which had to be met before assistance could be granted a needy aged individual were stated in the following language:

". . . provided further that the requirements for length of time of actual residence in Texas shall never be less than five (5) years during the nine (9) years immediately preceding the application for old-age

---

2

The Social Security Act was enacted by the Federal Government in 1935. At that time the Texas Constitution was amended to authorize aid for the needy aged and to take advantage of the federal act. In 1937 two constitutional amendments were added which permitted the State to receive federal grants-in-aid and authorized State aid up to fifteen dollars a month for the needy blind as well as assistance for needy children. These amendments were subsequently combined and are presently carried in the Constitution as Section 51-a of Article III.

assistance and continuously for one (1) year immediately preceding such application."[3]

There has been no substantial change in the above quoted language,[4] and the residence requirement for the needy blind is stated in identical terms. [5]

Although technically there is a difference in the language used in the residence requirements of Section 51-b and that used in Section 51-a(1) and 51-a(2), the similarity is greater than the difference. It has been the consistent departmental construction of the State agency which has been charged with the duty of administering the statutes enacted in pursuance to the provisions of Section 51-a that the residence requirements are not cumulative, and administrators of the Social Security Act have accepted this construction. The people of Texas are well familiar with the welfare programs which have been carried out pursuant to the provisions of Section 51-a. It should be presumed that they contemplated the establishment of a similar program to fill the remaining gap by covering an omitted class, newly provided for by the 81st Congress.

Prior to the adoption of Section 51-b, the Legislature was not authorized to aid needy permanently disabled persons. The only purpose of the Legislature in passing H.J.R. 30 [6] was to submit to the people a measure which, if adopted, would authorize the Legislature to enact a law which would permit the State to enter into a Federal-State cooperative program for aid to such persons. In adopting this measure, the people evidenced their intention that the Legislature be authorized to enact such a law. That it was never

---

[3]

H.J.R. 19, Acts 44th Leg., Reg. Sess., 1935, pp. 1227, 1228.

[4]

Article III, Section 51-a(1) reads, in part, as follows:

". . . provided that no such assistance shall be paid. . . to any person who shall not have actually resided in Texas for at least five (5) years during the nine (9) years immediately preceding the application for such assistance and continuously for one (1) year immediately preceding such application;..."

[5]

Article III, Section 51-a(2).

[6]

Acts, 54th Leg., 1955, p. 1824.

contemplated that any program of this type be instituted unless federal aid was obtained is evidenced by the provision in Section 51-b which states "that the amount paid out of State funds to any individual may never exceed the amount paid to that individual out of Federal funds." Yet obviously the people of Texas desired to spend a substantial sum in assisting needy, totally and permanently disabled persons--up to a total of One Million Five Hundred Thousand Dollars per year.

Therefore, since there is ambiguity in the constitutional provision, any doubt as to authorization to comply with the residence requirements of the federal act should be resolved in favor of authorization. Any other interpretation would prevent putting into effect this new welfare program and would thwart the evident purpose of the people in adopting the constitutional provision. You are therefore advised that the residence requirements imposed by Senate Bill 61 are in conformity with the Texas Constitutional requirements.

Under Section 51-b certain express qualifications must be met before an applicant is qualified to receive assistance. These constitutional limitations should be expressly included in the enabling Act since the constitutional provision is not self-executing and since it could not necessarily be inferred that the Legislature intended to include all of requisite constitutional limitations.

The Constitution in identifying eligible applicants described them as being "totally and permanently disabled by reason of a mental or physical handicap or a combination of physical and mental handicaps and not feasible for vocational rehabilitation, ..." (Emphasis ours.) We call your attention to the fact that in Section 16-B of the bill, the third paragraph on page 3 states the requirement that the individual is not feasible for vocational rehabilitation in a clause following the description of an individual totally and permanently disabled by reason of a mental condition. We would suggest that this clause be drafted so as to make it clear that this constitutional requirement also applies to those individuals who are disabled by reason of physical disability and to thus avoid any question of ambiguity.

The Legislature is expressly authorized to add to the basic constitutional restrictions [7] as long as the additional restrictions

---

[7]

Section 51-b contains the following provision:

"The Legislature shall have the power to provide by general laws, under such limitations and restrictions as may be deemed by the Legislature expedient, for assistance to needy individuals. . ."

are not in conflict with the constitutional limitations. With regard to the additional restrictions contained in the bill, and without enumerating them, you are advised that these restrictions are in conformity not only with the constitutional provision but also with the pertinent provisions of the Social Security Act.

## SUMMARY

The residence requirements of Senate Bill 61 are in conformity with the residence requirements of Section 51-b of Article III of the Texas Constitution which requires a total residence period of five years before assistance can be granted to a totally and permanently disabled person. The constitutional restrictions should be expressly included in the bill since Section 51-b is not self-executing. Section 51-b authorizes restrictions additional to those contained therein. The additional restrictions embodied in the bill are constitutional and in conformity with the Social Security Act.

Yours very truly,

WILL WILSON
Attorney General

By *Marietta McGregor Payne*
Marietta McGregor Payne
Assistant

APPROVED:

OPINION COMMITTEE
H. Grady Chandler, Chairman

MMP:cs